UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONNIE L. RANDOLPH,

                Plaintiff,         Civil Action No. 15-11945
                                      Honorable John Corbett O'Meara
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 16]**

      Plaintiff Ronnie L. Randolph ("Randolph") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Randolph is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Randolph's Motion for Summary Judgment [15] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II. REPORT**

**A. Procedural History**

On September 21, 2012, Randolph filed an application for SSI, alleging a disability onset date of January 11, 2012.[1] (Tr. 114-19). This application was denied initially on January 30, 2013. (Tr. 63-66). Randolph filed a timely request for an administrative hearing, which was held on December 17, 2013, before ALJ Kevin J. Detherage. (Tr. 512-37). Randolph, who was represented by attorney Adam Banton, testified at the hearing, as did vocational expert Kenneth Brodie. (*Id.*). On January 30, 2014, the ALJ issued a written decision finding that Randolph is not disabled under the Act. (Tr. 15-25). On April 10, 2015, the Appeals Council denied review. (Tr. 1-5). Randolph timely filed for judicial review of the final decision on May 29, 2015. (Doc. #1).

**B. Framework for Disability Determinations**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

---

[1] Randolph previously filed an application for SSI alleging disability beginning on February 1, 1999. (Tr. 15). On February 11, 2011, an ALJ issued a written decision denying that application (Tr. 33-40), and on June 15, 2012, the Appeals Council denied Randolph's request for review of that decision (Tr. 47-49). ALJ Detherage, who adjudicated the claim at issue herein, determined that Randolph submitted evidence showing a "new and material change in circumstances beginning January 12, 2012," and, thus, he was not bound by the findings of the previous ALJ as of that date. (Tr. 15).

2

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C. Background**

    *1. Randolph's Reports and Testimony*

At the time of the administrative hearing, Randolph was 53 years old, and at 5'6" tall, weighed 145 pounds. (Tr. 143, 515). He was divorced and lived with his girlfriend in a trailer. (Tr. 515-16). He completed the eighth grade, attending special education classes, but had no further education. (Tr. 149, 516). Previously, he worked on a farm milking cows for a few months. (Tr. 149, 517). However, he stopped working in 1999 because he was convicted of

aggravated assault. (Tr. 519). Randolph has not worked since being released from prison in 2006. (*Id.*).

Randolph alleges disability as a result of coronary artery disease, diabetes, and back and neck pain. (Tr. 148, 163). He underwent triple bypass surgery in August of 2012 and indicated that he still suffers from some chest pain, but has no other heart-related symptoms. (Tr. 520-21, 531). He also suffers from low back and hip pain, for which he takes morphine. (Tr. 523-24, 529). In addition, Randolph testified that he is "going blind in [his] right eye" as a result of a head injury suffered in a 1997 car accident. (Tr. 522).

Randolph has no problems with personal care, is able to care for his pet, prepares his own meals, and does the laundry and dishes. (Tr. 164-65, 525). He is able to drive and shop for food in stores (although he does not like to do so). (Tr. 166, 525). Randolph indicated that he has difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, and using his hands. (Tr. 168). He testified that he cannot lift more than a gallon of milk. (Tr. 523). Randolph further testified that he can walk about 20 feet at a time, cannot stand for very long, and can sit for only 10-20 minutes at a time. (Tr. 523). He spends his days watching television and listening to the radio. (Tr. 167, 527). He has to lay down at least two or three times a day, for an hour at a time, to alleviate his back pain. (Tr. 530). He also testified that he "can't read" and "can't spell neither." (Tr. 526).

        2.     *Medical Evidence*

The Court has thoroughly reviewed Randolph's medical record. In lieu of summarizing his medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. *Vocational Expert's Testimony*

Kenneth Brodie testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 531-34). The VE characterized Randolph's past relevant work as a dairy farm worker as semi-skilled in nature and heavy in exertion. (Tr. 531). The ALJ then asked the VE to imagine a claimant of Randolph's age, education, and work experience who can perform light work, with the following additional limitations: limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements and involving only simple work-related decisions and routine workplace changes; can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to dust, fumes, gases, and poorly ventilated areas; can occasionally rotate, flex, or extend the neck; no commercial driving; and limited to only occasional depth perception. (Tr. 532). The VE testified that the hypothetical individual would not be capable of performing Randolph's past relevant work. (Tr. 533). However, the VE testified that the hypothetical individual would be capable of working in the jobs of housekeeping/cleaner (162,845 jobs nationally), marker (268,000 jobs), and self-service store sales attendant (200,213 jobs). (*Id.*).

**D.    The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Randolph is not disabled under the Act. At Step One, the ALJ found that Randolph has not engaged in substantial gainful activity since September 21, 2012 (the application date). (Tr. 17). At Step Two, the ALJ found that Randolph has the severe impairments of coronary artery disease, status post coronary artery bypass, diabetes, degenerative disc disease, a cognitive impairment, and a vision impairment. (*Id.*). At Step Three, the ALJ found that Randolph's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18).

The ALJ then assessed Randolph's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: limited to simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements and involving only simple work-related decisions and routine workplace changes; can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to dust, fumes, gases, and poorly ventilated areas; can occasionally rotate, flex, or extend the neck; no commercial driving; and limited to only occasional depth perception. (Tr. 20).

At Step Four, the ALJ determined that Randolph is unable to perform his past relevant work. (Tr. 22). At Step Five, the ALJ concluded, based in part on the VE's testimony, that he is capable of performing a significant number of jobs that exist in the national economy. (Tr. 24). As a result, the ALJ concluded that Randolph is not disabled under the Act. (Tr. 25).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In his motion, Randolph argues that the ALJ erred in: (1) assessing his RFC, and (2) evaluating his credibility.[2]  Each of these arguments is addressed below.

*1.     The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ determined that Randolph has the RFC to perform a limited range of light work.[3]  (Tr. 20).  In his motion, Randolph argues that "[his] testimony, as well as his objective medical findings during the relevant period supports a finding that he is incapable of performing work at the 'light' exertion level, which requires standing up to 6 hours per day." (Doc. #15 at 19).  For the reasons set forth below, however, the Court disagrees.

On August 16, 2011, a CT of Randolph's cervical spine showed degenerative disc narrowing with areas of mild stenosis at C4-C5 and C5-C6.  (Tr. 339).  On October 28, 2011, a CT myelogram of Randolph's cervical spine showed multilevel degenerative disc disease (mild at C3-C4 and more prominent from C4-C6) with moderate spinal canal stenosis at C5-C6 and nerve root compromise.  (Tr. 501).  A CT myelogram of Randolph's lumbar spine performed the same day showed advanced degenerative disc disease at L1-L2 with nerve root compromise and mild spinal canal stenosis, as well as mild disc bulges at L2-L3 and L3-L4 without stenosis or nerve root compression.  (Tr. 502).

On May 10, 2012, Randolph presented to Rodney Diehl, D.O., for an initial evaluation of

---

[2] In the "Issues for Review" section of his motion, Randolph also asserts that "the ALJ erred by failing to discuss or even consider the medical opinion from Ms. Stephanie Boring, PA." (Doc. #15 at 13).  Randolph does not, however, develop this argument at all in his brief, likely because his assertion is factually inaccurate; the ALJ specifically discussed Ms. Boring's opinion and assigned it "little weight."  (Tr. 23).

[3] Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds.  *See* 20 C.F.R. §416.967(b).  It also requires standing or walking for a total of approximately six hours in an eight-hour work day, with intermittent sitting during the remaining two hours.  *See Soc. Sec. Rul. 83-10*, 1983 WL 31251, at *6 (Jan. 1, 1983).

chest pain. (Tr. 391). Dr. Diehl ordered a stress test, which showed a resting left ventricular ejection fraction of 40%.[4] (Tr. 414-15). On July 5, 2012, Randolph underwent a left heart catheterization, bilateral selective coronary angiography, and left ventriculography, which showed triple vessel coronary artery disease and aortic valve sclerosis. (Tr. 298-99). On July 9, 2012, cardiovascular surgeon Robert Jones, M.D. recommended myocardial revascularization along with aortic valve replacement. (Tr. 247-49). On August 1, 2012, Dr. Jones performed triple coronary bypass surgery, assisted by Beth Sheridan, APRN. (Tr. 250-54).

On August 13, 2012, Randolph presented to physician's assistant Stephanie Boring, reporting chest pain and pressure but denying shortness of breath. (Tr. 312). Ms. Boring observed clear breath sounds bilaterally and an overall normal cardiovascular examination. (Tr. 313). On August 20, 2012, Randolph followed up with Ms. Sheridan, reporting no fatigue and only occasional shortness of breath. (Tr. 355). Ms. Sheridan noted that Randolph had already returned to smoking but otherwise was "doing well from a surgical standpoint." (Tr. 355-56). She permitted Randolph to start driving and indicated that he should limit himself to lifting ten pounds for the next four weeks, after which he could add ten pounds per month. (Tr. 356). Ms. Sheridan further noted that Randolph was "anxious to get back to work." (*Id.*).

On October 18, 2012, Dr. Diehl noted that Randolph was doing well from a cardiology standpoint, and he had no complaints of fatigue. (Tr. 387). Dr. Diehl observed normal pulmonary function, neck function, gait, station, and muscle strength and tone. (Tr. 389). On January 10, 2013, Randolph returned to see Ms. Boring, reporting some continued chest pain and

---

[4] Ejection fraction measures the percentage of blood leaving the heart each time it contracts. An ejection fraction of 55% or higher is considered normal, and an ejection fraction of 50% or lower is considered reduced. *Ejection Fraction: What does it measure?*, http://www.mayoclinic.org/ejection-fraction/expert-answers/FAQ-20058286 (last accessed August 8, 2016).

pressure since his surgery. (Tr. 477). Randolph's cardiovascular and respiratory examinations were normal, however. (Tr. 478).

On January 25, 2013, Randolph saw Serena Jiddou, D.O. for a consultative examination. (Tr. 442-46). Randolph reported experiencing chest pain since January 2011, but indicated that he continued to smoke a pack of cigarettes per day. (Tr. 442). Dr. Jiddou observed that Randolph ambulated slowly but without the use of any assistive devices. (Tr. 443). On examination, she noted normal cardiac and pulmonary function. (*Id.*). Dr. Jiddou further observed intact nerves, full muscle strength throughout, symmetric reflexes, and intact grip strength and dexterity, but found some decreased sensation in the lower extremities and clubbing of his digits. (Tr. 443, 445). She noted that Randolph could bend forward, squat, and heel and toe walk without difficulty, and straight leg raise testing was negative. (*Id.*). Dr. Jiddou further observed normal range of motion of Randolph's cervical and lumbar spines, shoulders, elbows, knees, hips, and ankles. (Tr. 444).

On January 31, 2013, Randolph returned to see Ms. Boring, complaining of frostbite on his middle finger. (Tr. 475). He specifically denied chest pain/pressure and dyspnea. (*Id.*). Ms. Boring observed normal respiratory and cardiovascular examinations. (Tr. 476). On February 28, 2013, Randolph again denied chest pain/pressure and dyspnea to Ms. Boring, who again observed normal respiratory and cardiovascular examinations. (Tr. 473-74). On March 7, 2013, Randolph reported chronic low back pain to Ms. Boring, along with intermittent chest pain/pressure triggered by exercise and dyspnea on exertion. (Tr. 470). Ms. Boring observed diminished respiration and wheezing, a normal cardiovascular examination, and tenderness over the cervical and lumbar spines. (Tr. 471). Testing performed on April 11, 2013, revealed a mildly diminished ejection fraction of 45-50%. (Tr. 457-59).

On May 16, 2013, Randolph reported dyspnea, chest pain, dizziness, and leg pain to Dr. Diehl. (Tr. 450). Dr. Diehl noted that Randolph was "[d]oing well" and strongly encouraged him to quit smoking. (*Id.*). Dr. Diehl observed normal neck, respiratory, and cardiovascular examinations, as well as normal gait and station. (Tr. 454-55). One week later, on May 23, 2013, Randolph reported chronic, stable back pain to Ms. Boring. (Tr. 467). Ms. Boring noted that Randolph continued to smoke cigarettes and observed normal cardiovascular and respiratory examinations. (Tr. 468). Similarly, on June 13, 2013, Randolph reported back and hip pain to Ms. Boring, but denied fatigue, chest pain, and dyspnea. (Tr. 464-65). Ms. Boring observed diminished respiration, a normal cardiovascular examination, and tenderness in the lumbar spine and right sacroiliac joint. (Tr. 465). On August 9, 2013, Randolph again complained of back pain to Ms. Boring. (Tr. 461). She observed diminished respiration and a normal cardiovascular examination and again stressed the importance of smoking cessation. (Tr. 462).

In the face of all of this evidence, Randolph relies on only a few select pieces of medical evidence in challenging the ALJ's RFC finding. (Doc. #15 at 14-20). For example, Randolph first cites the July 2011 consultative examination findings of R. Scott Lazzara, M.D. (Tr. 241-45). At that time, more than one year before the application date, Dr. Lazzara noted that Randolph's diabetes was poorly controlled. (Tr. 245). Treatment notes from the relevant time period, however, do not support a finding that Randolph's diabetes caused any functional limitations. (Tr. 312-13, 387-89, 442-44, 450-55, 461-78). Dr. Lazzara also observed that Randolph had difficulty getting on and off the examination table, with heel and toe walking, and with squatting. (Tr. 243). But, Dr. Jiddou observed more recently that Randolph had no difficulty with these activities (Tr. 443), and the ALJ reasonably credited his opinion in this respect.

11

Randolph next cites the October 2011 CT myelograms of his lumbar and cervical spines discussed above. (Doc. #15 at 17 (citing Tr. 501-02)). The ALJ specifically considered these imaging studies, however, and found that Randolph's degenerative disc disease was a severe impairment. (Tr. 17, 21-22). It is Randolph's burden to prove the limitations resulting from this impairment at the RFC stage. *See, e.g.,* 20 C.F.R. §416.912(c) (claimants bear the responsibility of providing evidence showing how their impairments affect their ability to work); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof). Beyond asserting in conclusory fashion that these "objective findings and symptoms are indicative of an individual with significant standing and walking limitations" (Doc. #15 at 17), Randolph simply does not show how these studies establish that his ability to stand or walk was more limited than the ALJ found.

The ALJ also considered the records of Randolph's triple bypass surgery and subsequent follow up with several providers (Tr. 21-22), and Randolph again fails to point to any evidence in these records undermining the ALJ's RFC finding. Specifically, at visits to medical providers following this surgery, Randolph denied chest pain or shortness of breath (Tr. 473, 475), and his providers consistently documented normal cardiovascular and respiratory examinations (Tr. 313, 389, 443, 455, 468, 474, 476, 478).

In support of his argument that he could not perform the requirements of light work, Randolph also cites Dr. Jiddou's January 2013 finding that he ambulated slowly, had clubbing in his digits, and had decreased sensation to pinprick in the bilateral lower extremities. (Doc. #15 at 18 (citing Tr. 445)). However, Randolph provides no support for his conclusory assertion that this is "consistent with an inability to sustain the required standing/walking of light exertion work." (*Id.* at 18). Moreover, Randolph ignores Dr. Jiddou's concurrent findings that he

12

ambulated without an assistive device and showed intact nerves; full muscle strength; had the ability to bend, squat, and heel and toe walk; and had normal range of motion. (Tr. 443-44).

Finally, Randolph points to a Physical Residual Functional Capacity Questionnaire completed by Ms. Boring on November 11, 2013, in which she indicated that Randolph suffered from cervical and lumbar degenerative disc disease, coronary artery disease, diabetes, and chronic obstructive pulmonary disease. (Doc. #15 at 18-19 (citing Tr. 487-90)). She opined that Randolph was likely to be off task 25% of the time and was incapable of even a low stress job, saying that stress was likely to aggravate his pain levels. (Tr. 488). Ms. Boring further opined that Randolph could walk less than one city block at a time, sit for only ten minutes at a time, and stand for only fifteen minutes at a time. (*Id.*). In addition, Ms. Boring opined that Randolph could sit for two hours total and stand or walk for two hours total in an eight-hour work day; needed to walk every ten minutes for ten minutes; needed to be able to shift positions at will; needed to take a break every ten minutes for ten minutes; needed to elevate his legs; and could only occasionally lift ten pounds. (Tr. 489). Ms. Boring also opined that Randolph was limited in his ability to move his neck; could never use his hands, fingers, or arms; could never stoop, crouch, or climb ladders; and could only rarely twist or climb stairs. (Tr. 489-90). Lastly, Ms. Boring opined that Randolph would be absent from work four or more days per month. (Tr. 490).

Randolph's reliance on Ms. Boring's opinion is misplaced. The ALJ specifically considered this opinion and gave it "little weight" because the medical record did not support such extreme limitations. (Tr. 23). Randolph does not argue that the ALJ erred in his analysis of this opinion and, thus, has waived any such argument. *See, e.g., Davis v. Comm'r of Soc. Sec.*, 2016 WL 3713177, at *11 (E.D. Mich. June 15, 2016) ("Plaintiff fails to challenge the ALJ's

13

reasoning in his brief; thus, Plaintiff has waived any argument of error in the weight assigned to Dr. Green's opinion."); *Bracey v. Comm'r of Soc. Sec.*, 2011 WL 3359678, at *6 (E.D. Mich. July 13, 2011) ("Any issue not raised directly by plaintiff is deemed waived."). Moreover, even if Randolph had advanced such an argument, the Court would find it meritless, as the record supports the ALJ's decision to discount Ms. Boring's opinion on the basis that "the medical record does not support such extreme limitations" as those imposed by Ms. Boring. (Tr. 23). Specifically, as the ALJ explained, although Ms. Boring opined that Randolph was unable to bend, crouch, grasp objects, or use his hands for fine manipulation (Tr. 490), Dr. Jiddou observed Randolph to have "normal muscle strength, a normal range of motion in his extremities and spine, no muscle atrophy, and negative straight leg raising … [and that he could] bend forward, squat, and heel and toe walk without difficulty." (Tr. 22, Tr. 443-44). Thus, the ALJ reasonably gave little weight to Ms. Boring's opinion. *See Soc. Sec. Rul. 06-03p*, 2006 WL 2329939, at *2-3 (Aug. 9, 2006) (ALJ should consider how consistent an opinion from a non-acceptable medical source is with the record as a whole).

For all of these reasons, Randolph has failed to establish that the ALJ erred in formulating his RFC.[5]

### 2. The ALJ's Credibility Determination is Supported by Substantial Evidence

Randolph's second argument – that the ALJ erred in evaluating his credibility – is also without merit. Courts have recognized that determinations of credibility related to a claimant's subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of*

---

[5] In challenging the ALJ's RFC finding, Randolph also references his own testimony as to his limitations in walking, sitting, and standing. (Doc. #15 at 19). The ALJ specifically found Randolph's subjective complaints were not entirely credible, however, and this finding is supported by substantial evidence. *See* Section II.F.2 *infra*.

14

*Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  When a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must then consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible.  *Soc. Sec. Rul. 96-7p*, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §416.929(c).

   Randolph argues that the ALJ erred in employing "boilerplate" language to assess his credibility, claiming that "blanket assertions that the plaintiff is not believable, such as the one used by the ALJ here, are insufficient."  (Doc. #15 at 21).  Courts have repeatedly explained, however, that the use of so-called boilerplate language to articulate a credibility finding does not require remand where the ALJ sufficiently explains that finding based on the facts of the case.  *See, e.g., Hemingway v. Comm'r of Soc. Sec.*, 2015 WL 4967060, at *8 (E.D. Mich. Aug. 19, 2015) (citing cases).  Here, the ALJ <u>did</u> explain exactly how Randolph's medical records – as well as other evidence in the record – belied his allegations of disabling pain and impairments.  Specifically, the ALJ explained that he found Randolph's allegations of disability not credible because:  (1) Randolph's testimony that he could not walk more than twenty feet or lift more than a gallon of milk was inconsistent with Dr. Jiddou's and Dr. Diehl's observations; (2) after his heart surgery, Randolph reported he was anxious to get back to work, suggesting that he felt he was physically able to work; (3) Randolph did not exhibit significant cardiovascular

15

symptoms following his surgery; and (4) Randolph continued smoking against medical advice. (Tr. 23). These reasons, taken together, provide ample support for the ALJ's decision to discount the credibility of Randolph's allegations of disability, particularly where Randolph does not even acknowledge – let alone challenge – these various reasons.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [16] be GRANTED, Randolph's Motion for Summary Judgment [15] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: August 16, 2016  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

**CERTIFICATE OF SERVICE**

   The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 16, 2016.

               s/Eddrey O. Butts
               EDDREY O. BUTTS
               Case Manager